Lia Comerford (PHV)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Telephone: 971-717-6420
lcomerford@biologicaldiversity.org

Kristine M. Akland
Center for Biological Diversity
317 E. Spruce St.
Missoula, MT 59807
Telephone: 406-544-9863
kakland@biologicaldiversity.org

*Counsel for Defendant-Intervenor and
Proposed Cross-claimant
Center for Biological Diversity*

*Additional Attorneys on Signature Page*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| ROCKY MOUNTAIN ELK FOUNDATION and PROPERTY AND ENVIRONMENT RESEARCH CENTER,<br><br>   Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF THE INTERIOR and U.S. FISH AND WILDLIFE SERVICE,<br><br>   Defendants,<br><br>and | CV-25-29-BU-DWM<br><br><br>**CENTER FOR BIOLOGICAL DIVERSITY'S BRIEF IN SUPPORT OF ITS MOTION TO LIFT THE STAY AND FILE A SUPPLEMENTAL PLEADING AGAINST FEDERAL DEFENDANTS** |

DEFENDERS OF WILDLIFE and
CENTER FOR BIOLOGICAL
DIVERSITY,

   Defendant-Intervenors

CENTER FOR BIOLOGICAL
DIVERSITY,

   Proposed Cross-Claimant

  v.

U.S. DEPARTMENT OF THE
INTERIOR and U.S. FISH AND
WILDLIFE SERVICE,

   Proposed Crossclaim-
   Defendants.

**INTRODUCTION**

This case involves the U.S. Department of the Interior's and U.S. Fish and Wildlife Service's ("the Service" or, collectively with the Department of the Interior, "Federal Defendants") regulations implementing Endangered Species Act ("ESA" or "the Act") section 4(d), 16 U.S.C. § 1533(d), which are meant to conserve species listed as threatened under the Act. Plaintiffs Rocky Mountain Elk Foundation and the Property and Environment Research Center (collectively, "Plaintiffs") challenge Federal Defendants' "blanket rules," which establish a regulatory regime under which, by default, the Service extends the same protections to threatened species upon listing that the Act automatically provides endangered species unless the Service issues a tailored, species-specific 4(d) rule for that species. *See* 50 C.F.R. § 17.31(a) (2025) and 50 C.F.R. § 17.71(a) (2025). The Service issued the blanket rules roughly contemporaneously with the ESA's passage and applied this regime consistently for more than 40 years until the Trump Administration rescinded the rules in 2019—only for the Biden Administration to reinstate them five years later. From the time the Service first adopted the blanket rules through the 2019 rescission, the Service issued species-specific 4(d) rules for approximately 25 percent of species it listed as threatened. *See* U.S. Fish and Wildlife Service, Regulations Pertaining to Endangered and Threatened Wildlife and Plants, 89 Fed. Reg. 23919, 23921 (Apr. 5, 2024).

Despite the blanket rules' long tenure and recent reinstatement, and the essential protections they provide to hundreds of threatened species, the Service has once again issued a rule rescinding the blanket rules option for species newly listed or reclassified as threatened after August 20, 2026. *See generally*, U.S. Fish and Wildlife Service, Regulations Pertaining to Endangered and Threatened Wildlife and Plants, 91 Fed. Reg. 45723, 45724–25, 45736 (July 21, 2026) (revising blanket rules at 50 C.F.R. § 17.31(a) and § 17.71(a) to make them inapplicable to species issued after the effective date of the final rule). As part of this same rulemaking, the Service has also added a requirement that it analyze the economic impacts of each species-specific 4(d) rule it adopts. *Id.* at 45725, 45736 (adding new regulatory text to 50 C.F.R. § 17.31(d) and § 17.71(d)). This requirement directly conflicts with the plain language of the ESA, which requires that such rules provide for the "conservation" of threatened species. 16 U.S.C. § 1533(d).

Taken together, the Service's revisions to its ESA section 4(d) regulations amount to an abdication of its responsibility to conserve threatened species. The revisions are counter to the Act's plain language and structure, undermine its fundamental purpose, lack any rational basis or justification, are not supported by fact, and are arbitrary and capricious and contrary to law under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706. These changes will

impact numerous imperiled species, including species proposed for listing as threatened under the ESA; species that are already listed under the Act but awaiting final species-specific 4(d) regulations or whose 4(d) protections may be revised, including Montana species such as the grizzly bear and wolverine; species that may be listed as threatened in the future; and species currently covered by the blanket rules or that might be reclassified as threatened.

The Center, defendant-intervenor in the present case, now asks the Court to lift the stay and allow it to file a supplemental answer asserting crossclaims challenging Federal Defendants' unlawful and damaging ESA section 4(d) regulatory revisions as part of this pending suit pursuant to Federal Rules of Civil Procedure 15(d), which allows parties to file supplemental pleadings, and 13(g), which allows parties to file crossclaims against co-parties "if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim." Fed. R. Civ. Proc. 13(g). Alternatively, the Center requests that the Court exercise its discretion under Rule 15(d) to allow the Center to file a supplemental pleading in the form of a complaint following (or in conjunction with) a realignment of the Center from defendant to plaintiff. *See Keith v. Volpe*, 858 F.2d 467, 476 (9th Cir. 1988) (upholding the shifting of a party "from plaintiff to defendant" and the introduction of new claims under Rule 15 instead of "forc[ing] the plaintiffs to begin a new lawsuit" because it was in the "interests of

3

judicial economy" and the parties and court "were familiar with the underlying action").

As addressed below, Plaintiffs' claims and the Center's proposed crossclaims share the same subject matter: the blanket rules and, more broadly, the Service's obligation to conserve threatened species pursuant to ESA section 4(d). There is a logical relationship between the current case and the proposed supplemental crossclaims, and allowing the Center's crossclaims would promote judicial efficiency and fairness, permitting this Court to resolve this dispute holistically in the venue chosen by Plaintiffs and minimize procedural steps and litigation. For these and other reasons addressed below, the Court should lift the stay in this case and exercise its broad discretion to allow the Center to file a supplemental pleading against Federal Defendants.

## ARGUMENT

### I.    The Court Should Lift the Stay in This Case.

The Court should lift the stay in this case. On August 14, 2025, Plaintiffs and Federal Defendants jointly moved to stay this litigation pending the Service's expected rescission of the blanket rules. *See generally*, ECF No. 39. The basis for that motion was the Service's initiation of a rulemaking process to reconsider the Service's 2024 reinstatement of the blanket rules. According to the Service, it expected to submit a proposed rule rescinding the blanket rules by October 31,

4

2025, and a final rule by October 31, 2026. *Id.* As such, Plaintiffs and Federal Defendants asked the Court to stay the litigation through October 31, 2026. The Center did not oppose the motion, and the Court granted that motion on August 19, 2025. ECF No. 40.

The Service has issued the final rule. *See generally*, 91 Fed. Reg. 45723–36. As the basis for the Court's stay is no more, the Court should lift the stay. *See Nken v. Holder*, 556 U.S. 418, 433 (2009) (explaining that stays are issued as "'an exercise of judicial discretion'" and "'dependent upon the circumstances of the particular case'") (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672–73 (1926)); *see also Pengelly v. Zimmerman,* No. CV 19-10-M-DLC, 2020 WL 8474860, at *2 (D. Mont. Dec. 1, 2020) (stating that "a district court retains discretion to lift a previously imposed stay when circumstances change").

## II.     The Court Should Grant the Center's Motion to File a Supplemental Pleading Against Federal Defendants.

The Center seeks leave to file supplemental claims either as a supplemental answer asserting crossclaims against Federal Defendants or, alternatively, as a supplemental pleading in the form of a complaint upon realignment of the parties. Pursuant to Rule 15(d), on a motion "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. Proc. 15(d). Under either alternative, the Center's claims are supplemental because they

5

challenge the Service's recent regulatory revisions, which occurred almost a year after the Center filed its Answer in this case. *Compare* 91 Fed. Reg. 45723–36 (final rule issued July 21, 2026) *with* Center for Biological Diversity's Answer in Intervention, ECF No. 26 (filed June 16, 2025). Courts have broad discretion to allow supplemental pleadings, and Rule 15(d) "permits the bringing of new claims" to "promote the economical and speedy disposition of the controversy." *Keith*, 858 F.2d at 473–74. Given the rescission and reinstatement of the blanket rules now on several occasions, bringing all arguments regarding their validity together for resolution meets the objectives of Rule 15(d). The Court should exercise this broad discretion to grant the Center's motion .[1]

### A. The Court Should Grant the Center's Motion to File a Supplemental Answer Asserting Crossclaims Against Federal Defendants.

The Court should exercise its broad discretion to grant the Center's motion

---

[1] The Court issued a scheduling order, but that order did not include a date by which the parties were required to file supplemental pleadings. *See* ECF No. 37 (setting September 29, 2025 deadline for the parties to seek leave to amend the pleadings). Nonetheless, even if the schedule had included such a deadline, good cause would exist to modify the schedule because it would have been impossible for the Center to file its supplemental claims before the Service issued the final rule and the Center has been diligent and moved expeditiously to supplement its claims. *See* Fed. R. Civ. Proc. 16(b)(4) (providing that scheduling order "may be modified only for good cause and with the judge's consent"); *see also Ronan Tel. Co. v. Verizon Select Servs., Inc.*, 340 F.R.D. 167, 170–71 (D. Mont. 2021) (Molloy, J.) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("The central focus of a good cause inquiry under Rule 16 is whether the moving party acted with 'diligence.'")).

to file supplemental crossclaims against Federal Defendants. Rule 13(g) provides that "[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action." Fed. R. Civ. Proc. 13(g); *see also In re Cessna Distributorship Antitrust Litig.*, 532 F.2d 64, 68 n.7 (8th Cir. 1976) (noting that "[a] cross-claim must be stated in a pleading" but that "it is not itself a pleading"). Federal Defendants and the Center are co-parties. Thus, the only question is whether the Center's proposed crossclaims arise out of the same transaction or occurrence as the subject matter of Plaintiffs' original claim. They do.

In the Ninth Circuit, courts apply the "logical relationship" test to evaluate whether crossclaims arise out of the "transaction or occurrence that is the subject matter of the original action." *See Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, Case No. 3:19-CV-00709, 2020 WL 1821428, at **3–4 (D. Nev. Apr. 10, 2020) (applying logical relationship test when evaluating challenge to Rule 13(g) crossclaims). This is a liberal test that "'attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978)).[2] The test involves

---

[2] While the *Pochiro* Panel was discussing this standard in the context of evaluating

asking "whether the crossclaim involves many of the same factual and legal issues present in the main action." *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1432 (3d ed. 1998); *see also id.* § 1431 ("[T]he general policy behind allowing crossclaims is to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps.").

Here, the Center's proposed crossclaims involve many of the same factual and legal issues raised in Plaintiffs' Complaint. The gravamen of Plaintiffs' claims and the Center's proposed crossclaims are the Service's blanket rules, the statutory text of ESA section 4(d), and more broadly the Service's obligation to conserve threatened species pursuant to ESA section 4(d). Plaintiffs' first and second claims allege that the Service's blanket rules exceed its authority under ESA section 4(d) and that the rules are not necessary and advisable for the conservation of threatened species, and Plaintiffs' third claim challenges the Service's 2024 reinstatement of the blanket rules. ECF No. 1, ¶¶ 105–24. Similarly, the Center's

---

compulsory counterclaims under Federal Rule of Civil Procedure 13(a), courts have generally held that the standards for compulsory counterclaims apply to crossclaims under Rule 13(g). *See* Crossclaims—Scope of Rule 13(g), 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1432 (3d ed. 1998) ("Since the same verbal formulation also serves as the basis for defining compulsory counterclaims under Rule 13(a), most courts have held that the standards developed for dealing with compulsory counterclaims also apply to crossclaims under Rule 13(g).") (internal footnotes omitted).

proposed crossclaims challenge the Service's rescission of the blanket rules and the Service's related promulgation of rules requiring economic analyses when it issues species-specific 4(d) rules. *See* Motion Attachment A, ¶¶ 78–96 (Proposed Supplemental Answer). Further, the relief the parties seek significantly overlaps, as Plaintiffs' first and second claims seek relief that would directly affect the Center's proposed crossclaims, including a declaration that the Service violated the ESA in issuing the blanket rules. *Compare* ECF No. 1, ¶¶ 105–121 & p. 42 (Plaintiffs' claims and Prayer for Relief) *with* Proposed Supplemental Answer, p. 33–34 (Crossclaims Prayer for Relief). The underlying basis for the claims is the same.

At least one court has allowed crossclaims in a similar situation. In *Seattle Audubon Society v. Lyons*, federal defendants sought to file crossclaims seeking declaratory relief against a defendant-intervenor in a case brought by environmental organizations challenging the 1994 Northwest Forest Plan. 871 F. Supp. 1286 (W.D. Wash. 1994). Although the defendant-intervenor had intervened to defend an earlier iteration of the plan, the district court allowed the crossclaims under Rule 13(g)'s "expansive" standard, noting that "[i]t makes no difference that the 1992 forest plan has been dropped; both plans are parts of the same evolving controversy, and the "'occurrence that is the subject matter'" of the action is federal management of the forests that contain spotted owl habitat." *Id.* at 1290. The Ninth Circuit, in affirming the district court's decision to grant summary

9

judgment to the federal defendants, approved of the district court's decision allowing the crossclaims, stating that "unless the [defendant-intervenor's] claims were litigated within a single proceeding, they faced the likelihood of confusion caused by differing judgments or, at least, the uncertainty and expense associated with proceeding later in another forum" and that the exercise of jurisdiction was not an abuse of discretion "[b]ecause the resolution of the [defendant-intervenor's] claims against the federal defendants in a single action was both possible and desirable." *Seattle Audubon Soc'y v. Moseley,* 80 F.3d 1401, 1406 (9th Cir. 1996). Here, likewise, Plaintiffs' claims and the Center's proposed crossclaims are part of the same evolving controversy and "occurrence that is the subject matter" of the action, and allowing the Center's crossclaims is both possible and desirable. As such, there is a logical relationship between Plaintiffs' claims and the Center's proposed crossclaims.

Allowing the Center's crossclaims will serve judicial economy and fairness because Rocky Mountain Elk Foundation and the Property and Environment Research Center are already parties in this case, able to present their arguments regarding the legality of the Service's blanket rules in the venue in which they filed the original action. Having the claims, arguments, and interested parties together in the same case will cause no prejudice to either Plaintiffs or Federal Defendants and will conserve judicial resources by minimizing procedural steps and allowing this

10

Court to efficiently and effectively resolve all these issues. *See Safari Club International v. Demientieff*, 227 F.R.D. 300, 302–3 (D. Alaska Mar. 9, 2005) (after the original claims in the case were resolved on summary judgment or mooted by a new rulemaking, allowing the intervenors to file crossclaims challenging the new rulemaking in part because the crossclaims would cause no undue delay or prejudice plaintiffs or defendants).

The "purpose of Rule 15(d) [] to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981). Given the logical relationship between Plaintiffs' claims and the Center's proposed crossclaims, the efficiencies of resolving the pending case and the Center's crossclaims together, and the overall benefits to threatened species and their regulation that holistic resolution of these issues would afford, bringing all arguments regarding the blanket rules' validity and the Service's authority under section 4(d) together for resolution meets the objectives of Rule 15(d). As such, this Court should grant the Center's Motion to file a supplemental answer alleging crossclaims against Federal Defendants.

**B.      Alternatively, the Center Requests Leave to File a Supplemental Complaint as a Plaintiff.**

The Center, alternatively, seeks leave to file a supplemental pleading in the form of a complaint as a plaintiff against Federal Defendants, following (or in conjunction with) a realignment of the parties. Courts have broad discretion to realign the parties in a case based on the evolution of the primary controversy presented. *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983) ("The courts, not the parties, are responsible for aligning the parties according to their interests in the litigation."). Realigning the parties based on the Center's proposed supplemental claims comports with Rule 15(d)'s purpose "to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *William Inglis & Sons Baking Co.*, 668 F.2d at 1057. Given Federal Defendants' recent pattern of rescinding and reinstating the blanket rules, resolving the issues raised in this case and the Center's proposed supplement together would promote efficiency and a holistic resolution of these issues to avoid such regulatory swings in the future.[3]

The court has inherent authority to align the parties based on the "'primary

---

[3] The court could also exercise its discretion by granting the Center's motion and then realigning the parties by designating the Center as a plaintiff. *See Langford v. Campbell Soup Co.*, No. 88-c-1696, 1989 WL 64368, at **1–2 (N.D. Ill. June 9, 1989) (where court dismissed the original complaint on the merits but defendant's crossclaim against its co-defendant was still pending, the court redesignated the crossclaim as the complaint and aligned the parties accordingly).

matter in dispute,'" *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1157 (9th Cir. 2012) (internal citation omitted), because "'the alignment of the parties as designated in the original complaint is not binding on the court.'" *Keith*, 858 F.2d at 476 (quoting *Dolch*, 702 F.2d at 181); *see also Talen Montana, LLC v. Avista Corp, et al.*, No. 21-cv-00058-SPW-TJC, 2021 WL 6499504, at *3 (D. Mont. Dec. 1, 2021) ("Courts must realign the parties based on the primary controversy, even if the parties are adverse to each other on secondary or ancillary issues"). While motions to realign traditionally arise in cases based on diversity jurisdiction, district courts in the Ninth Circuit, outside the diversity context, have realigned parties based on their interests in the primary matter at issue. *See Plumtree Software, Inc. v. Datamize, LLC*, No. C 02-5693 VRW, 2003 WL 25841157, at **3–6 (N.D. Cal. Oct. 6, 2003); *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-cv-01699-LRH-DJA, 2021 WL 4037482, at *2 (D. Nev. Sep. 2, 2021); *Cowlitz Cnty. v. Univ. of Wash.*, No. 3:19-cv-06250-RBL, 2020 WL 1890616, at *6 n.2 (W.D. Wash. Apr. 16, 2020). Realigning the Center as a plaintiff to resolve the proposed challenges to the ESA section 4(d) rule revisions comports with this precedent.

Courts have identified several generally-applicable factors to guide their evaluation of motions to realign. In *FCE Benefits Administrators, Inc. v. Training, Rehabilitation and Development Institute, Inc.*, the court looked to: "(1) 'the first party to sue on the issue'; (2) the 'natural plaintiff' in the case" or party that "raises

13

'the affirmative claim' and who bears 'the burden of proof'; (3) whether realignment 'may aid in the logical presentation of the evidence at trial'; and (4) whether realignment 'mitigates the effects of . . . evident forum-shopping.'" No. 15-cv-01160-JST, 2016 WL 4426897, at *2 & n.1 (N.D. Cal. Aug. 22, 2016) (quoting *Plumtree Software*, 2003 WL 25841157, at **2–5).

Looking to those factors, realigning the Center as a plaintiff would not disturb Rocky Mountain Elk Foundation's role as the first filer and would maintain this matter in their chosen venue. *Plumtree Software*, 2003 WL 25841157, at **3, 5. At the core of this case are questions regarding the implementation of section 4(d) of the ESA and the Center's supplemental claims would address the legality of Federal Defendants' recent revisions to its implementing regulations. Thus, realigning the Center as a plaintiff comports with the objective of arranging the case around the proposed primary claim—Federal Defendants' rescission of the blanket rules, the propriety of those rules, and now the addition of economic considerations into 4(d) rules—and will help ensure a logical presentation of those arguments. *Id.* at **3–4. Therefore, now that Federal Defendants' longstanding interpretation of how best to implement ESA section 4(d) has again been rescinded, allowing the Center to file a supplemental pleading in the form of a complaint and realigning the parties based on their rearranged interests is well within the Court's authority and discretion. *See Cowlitz Cnty.*, 2020 WL 1890616,

14

at **6–7 (realigning the United States as a defendant and granting leave to amend its pleading appropriately).

The Ninth Circuit has recognized that courts have wide discretion regarding whether to allow supplemental pleadings pursuant to Rule 15(d). For example, in *Keith*, the Panel upheld the district court's decision to allow a plaintiff to file a supplemental complaint even though it shifted a party from plaintiff to defendant and introduced new claims. 858 F.2d at 473–76. Permitting the Center, as a realigned plaintiff, to file a supplemental pleading in the form of a complaint is well within this Court's discretion. While the Center would be filing a different type of pleading than it originally filed, this incongruity would be resolved by the Court's realignment of the Center from defendant to plaintiff. *See Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) ("Litigation is the pursuit of practical ends, not a game of chess.").[4]

## CONCLUSION

For the above reasons, the Court should grant this Motion and allow the Center to file a supplement answer asserting crossclaims against Federal Defendants or, alternatively, realign the Center as a plaintiff and allow it to file a

---

[4] If the Court grants the Center's motion to file a supplemental pleading in the form of a complaint as a plaintiff against Federal Defendants, following (or in conjunction with) a realignment of the parties, the Center would restyle its Proposed Supplemental Answer as a Complaint and refile with the Court.

supplemental pleading in the form of a complaint.

DATED this 21st day of July, 2026.

Respectfully submitted,

/s/     *Lia Comerford*
Lia Comerford (PHV)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Telephone: 971-717-6420
lcomerford@biologicaldiversity.org

Tanya Sanerib (DDC Bar No. 473506)*
Center for Biological Diversity
1025 1/2 Lomas Blvd NW
Albuquerque, NM 87102
Phone: 206-379-7363
tsanerib@biologicaldiversity.org
*PHV forthcoming

Brian Segee (PHV)
Center for Biological Diversity
226 W. Ojai Ave., Suite 101-442
Ojai, CA 93023
Telephone: 805-750-8852
bsegee@biologicaldiversity.org

Kristine M. Akland
Center for Biological Diversity
317 E. Spruce St.
Missoula, MT 59807
Telephone: 406-544-9863
kakland@biologicaldiversity.org

Counsel for Intervenor-Defendant and
Proposed Cross-claimant
Center for Biological Diversity

16

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief is 3,764 words, excluding the caption, signature blocks, and certificate of compliance.

Dated this 21st day of July, 2026.

/s/  Lia Comerford
LIA COMERFORD (PHV)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Telephone: 971-717-6420
lcomerford@biologicaldiversity.org